UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LYDALE SHUMATE,

      Plaintiffs,

                                 Case No. 09-11545

-vs-                             Hon: AVERN COHN

JOHNATHON CLEVELAND and
SCOTT BLANCHARD,

      Defendants.
_____/

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This is a civil rights case under 42 U.S.C. § 1983 with pendant state claims. Defendants Johnathon Cleveland (Cleveland) and Scott Blanchard (Blanchard) are police officers for the city of Ferndale, Michigan. Plaintiff Lydale Shumate (Shumate) claims Cleveland and Blanchard violated his constitutional rights by arresting him, striking him in the face while placing him in a police car, and refusing to treat his medical condition prior to transporting him to the Ferndale police station.

The complaint is in five counts:

(I)      Fourth and Fourteenth Amendment Violations under 42 U.S.C. § 1983;

(II)     Assault and Battery under Michigan law;

(III)    Intentional Infliction of Emotional Distress (IIED) under Michigan law;

(IV)    Gross Negligence under Michigan law; and

(V)     False Imprisonment/Arrest under Michigan law.

Now before the Court is defendants' motion for summary judgment on grounds of qualified immunity under the § 1983 claim and governmental immunity under the state law claims. For the reasons that follow, the motion will be granted on Counts II, III, IV, and V with respect to Cleveland and granted on Counts III, IV, and V with respect to Blanchard. Because genuine issues of material fact exist, the motion will be denied on Count I with respect to both defendants and on Count II with respect to Blanchard.

## II.  FACTS

This case arises out of a police response to a 911 call from the Hilton Convalescent Center (Center). Shumate was employed by the Center as a nurse's aide and maintenance worker. He is a Type I diabetic who is dependent on insulin and glucose.

The events in this case arise out of the Ferndale police's response to a call placed by Shumate's coworker reporting his strange behavior. After agreeing to purchase lottery tickets for a Aisha Hilton (Hilton), a coworker, he twice returned without purchasing the tickets. Hilton says that Shumate seemed disoriented and was kept dropping the money. After consulting with each other, the Center's other employees decided to seek help.

There is considerable confusion as to the nature of call to which the police responded and a transcript of the call was not provided. Cleveland said that he received a call from dispatch stating that an employee at the Center had reported trouble with another employee. Cleveland did not recall the exact words of the dispatch, but says that there was no reference to a medical condition. Blanchard also stated that

2

he did not recall dispatch's exact words, but believed that there was an employee that the Center was having trouble with or who needed help. Vilma Ignacio (Ignacio), Shumate's supervisor, said that she either called 911 or the Ferndale police and reported that Shumate was not acting right. She may have reported a suspicion of drugs, medicines, or health concerns but was inconsistent in her deposition testimony. Hilton said that she was concerned about Shumate's health because he had previously had a seizure while at work. She says that she suggested to her coworkers that they call 911 for the EMS to come. Bruce Barr, an EMS paramedic who responded to the call at the Center did not recall the nature of the call. However, the EMS report that was filed in response to the incident stated "Dispatched to 6131 Hilton for diabetic." There is no dispute that both the Ferndale police and EMS personnel responded to the call placed by Shumate's coworkers.

When Cleveland and Blanchard arrived at the Center, Shumate was resistant and belligerent. Shumate attempted to walk away from the officers and stated "I don't need the f***ing Ferndale Police Department." Shumate says that he informed that police that he was a diabetic and only required sugar to address his condition. Cleveland and Blanchard continued to pursue Shumate as he staggered through a parking lot at the Center, stumbling against building and cars and nearly falling through a railing onto a basement 15 feet below. Cleveland and Blanchard stated that they were concerned over Shumate's safety and attempted to control and assess him.

Shumate was subsequently handcuffed and arrested by Cleveland and Blanchard. While the officers were addressing Shumate, another officer, Sergeant Palazzolo (Palazzolo), ran Shumate's name through the Law Enforcement Information

Network (LEIN) and learned that he had outstanding arrest warrants. Cleveland says that Shumate was not arrested until Palazzolo informed the officers of the outstanding warrants. Shumate also said that the officers told him that he was being arrested due to warrants. However, Blanchard stated that he was unsure whether Palazzolo ran the LEIN search before they first attempted to handcuff Shumate.

After Shumate was handcuffed, Blanchard attempted to secure Shumate in a police car. During this attempt, Shumate spit on Blanchard and Blanchard responded by striking Shumate in the face with a closed fist. Virtually all of the facts surrounding this incident are disputed; they are described in more detail below.

There is no dispute that Cleveland and Blanchard were aware that Shumate was in need of medical care. Shumate says that he repeatedly told the officers that he was a diabetic and needed sugar. Further, Shumate's coworkers requested that the officers provide him with medical assistance when they arrived at the scene. The EMS personnel who arrived at the scene also requested to test and treat Shumate. While Cleveland and Blanchard admitted that they were aware of Shumate's need for medical attention, they refused to let the EMS personnel treat him at the scene. They said that they were concerned for the safety of Shumate and the EMS personnel and believed that it would be better to treat Shumate in a controlled environment. The EMS reports states:

> Dispatched to 3161 Hilton for diabetic. Upon our arrival
> [police department] stated [patient] was in their custody due
> to [patient] being combative and running out into roadway.
> [Police department] advised us they were taking [patient] to
> police station. We requested to check blood sugar on scene

however were denied access to [patient.][1]

While the EMS report also states that the Shumate was in need of immediate medical assistance, it is not clear whether this information was passed on to Cleveland and Blanchard.

After Shumate was secured in the police car, he was transferred to the Ferndale Police Station which is about a mile away. He was placed in a holding cell and EMS personnel arrived to treat him after about 15 minutes. Shumate's blood glucose level was 29, an extremely low level, and he was provided with glucose. He recovered almost immediately, was transferred to a hospital and discharged after a few hours. He was never charged with respect to the LEIN warrants. Cleveland and Blanchard stated that Shumate was given a choice to go to the hospital or be charged and chose the former.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." FED. R. CIV. P. 56(a). Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine

---

[1]The report continues: We followed [patient] to police station where we were able to assess [patient] and found [patient] blood glucose to be 29. [Patient] VS, IV, glucose as documented. [Patient] initially very combative. After IV initiated [patient] given dextrose as documented. [Patient] quickly became calm and alert/oriented x 3. [Patient] transferred to cot then to ambulance. [Patient] transported to and [patient] care turned over to WBH-RO ER staff with verbal written reports.

issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). All facts and inferences should be viewed in the light most favorable to the nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970).

## IV. ANALYSIS

Shumate claims that Cleveland and Blanchard violated his constitutional and state law rights by arresting him without probable cause, striking him in the face while securing him in a police car, and transporting him to a police station prior to treating him. If Shumate demonstrates the existence of a genuine issue of fact, the Court must determine whether that fact is material. The Court must consider a disputed fact material and deny summary judgment when, in light of the law of the case, that fact is outcome determinative. <u>Sova v. City of Mount Pleasant</u>, 142 F.3d 898, 903 (6th Cir. 1998) ("Where . . . the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."); <u>Bouggess v. Mattingly</u>, 482 F.3d 886. 888 (6th Cir. 2007). In contrast, if a disputed fact has no bearing on the outcome of the case, it is not material and will not preclude summary judgment.

### A. The Law

### 1. 42 U.S.C. § 1983

42 U.S.C. § 1983 creates no substantive rights; rather, it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979). "To successfully establish a claim

6

under § 1983, a claimant must show that he or she was deprived of a right secured by the Constitution and the laws of the United States by one acting under the color of law." Ahlers v. Schebil, 188 F.3d 365 (6th Cir. 1999) (internal citations omitted). Because Shumate seeks § 1983 relief against Cleveland and Blanchard state officials, he must also overcome their claim to qualified immunity by showing that (1) the facts alleged, taken in the light most favorable to him, constitute a violation of his constitutional rights and (2) the right was clearly established, that is, the right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 201–02 (2001) (internal quotation marks omitted).[2]

### a. False Arrest

A plaintiff claiming false arrest under § 1983 must prove that the arresting officer lacked probable cause to arrest him. Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005). Under most circumstances, an arrest pursuant to a facially valid arrest warrant is a complete defense to a § 1983 claim for false arrest. Id. Officers are entitled to rely on warrants appearing in LEIN when making an arrest. Taggart v. County of Macomb, 587 F. Supp. 1080, 1082 (E.D. Mich. 1982) ("[T]he Court holds, as a matter of law, that absent actual knowledge that an arrest warrant is no longer valid or in effect, it is reasonable for a law enforcement officer to make an arrest based on information received through the LEIN system."); Clark v. Oakland County, No. 08-14824, 2009 WL 5217682,

---

[2] The order in which the inquiry proceeds, given above as specified by Saucier, is no longer required. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

at *4 (E.D. Mich. Dec. 29, 2009); <u>Amiri v. City of Sterling Heights</u>, No. 04-72717, WL 1048755 at *2 (E.D. Mich. April 27, 2005). Further, an arrestee's innocence is irrelevant to whether or not there is a probable cause pursuant to a valid warrant. <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979); <u>Criss v. City of Kent</u>, 867 F.2d 259, 262 (6th Cir. 1988).

### b. Excessive Force

When a plaintiff's excessive force claim arises in the context of an arrest, it is analyzed under the Fourth Amendment. <u>Graham v. Connor</u>, 490 U.S. 396, 294 (1989). Thus "[t]he test is 'reasonableness at the moment' of the use of force, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" <u>Griffith v. Coburn</u>, 473 F.3d 650, 656 (6th Cir. 2007) (quoting <u>Graham</u>, 490 U.S. at 396. A court must balance the interests of the government against the consequences to the individual. <u>Burchett v. Keifer</u>, 310 F.3d 937, 944 (6th Cir. 2002). The Sixth Circuit has also noted that "[t]he assessment involves a fact-specific inquiry based on the totality of the circumstances that 'pay[s] particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest.'" <u>Morrison v. Board of Trustees of Green Township</u>, 583 F.3d 394, 401 (6th Cir. 2009) (quoting <u>Kostrzewa v. City of Troy</u>, 247 F.3d 633, 639 (6th Cir. 2001)). Despite the fact-specific nature of excessive force claims, the facts and circumstances of prior cases guide the Court's inquiry.

In <u>Vance v. Wade</u>, 546 F.3d 744 (6th Cir. 2008), the Sixth Circuit addressed the impact of a time delay in the reasonableness of an officer's use of force. In <u>Vance</u>, the plaintiff became belligerent when the police executed a search warrant on his business and was handcuffed and seated by a police car. After several minutes, the arresting officer

returned and forcibly placed the plaintiff into the police car, injuring his back.  There was no evidence that the plaintiff was belligerent or resistant after he was initially handcuffed.  The court determined that the officer was not entitled to qualified immunity because of the delay between the initial handcuffing and the use of force.  Id at 785.  However, the court observed that "[h]ad [the officer], in a decisive effort to minimize risks and calm a potentially volatile situation, simply escorted [the plaintiff] to the car and proceeded immediately to shove [him] into the car and cram him into the floorboard, this case would more likely fall in the 'sometimes hazy border between excessive and acceptable force.'" Id.  This case establishes that force may be appropriate when there is a risk of harm or active resistance by an arrestee, but may become excessive once the risk has been alleviated.

The Sixth Circuit has also established that the proper test for excessive force is not the mere size or impact, but whether the force was necessary to mitigate a threat or merely gratuitous.  In Pigram ex rel. Pigram v. Chaudoin, 199 Fed. App'x 509 (6th Cir. 2006), a student was handcuffed and escorted to a police car by a police officer after creating a disturbance at school.  When the student "got smart" with the officer and said "F*** you," the officer slapped him in the face.  Id. at 511.  While acknowledging that a police officer could forcibly tackle a suspect who was in a verbal argument with another officer, the court held that the officer had used excessive force.  Id.  The court noted that a tackle was more violent, but could be expected to alleviate the risk of a resisting suspect.  Id.  In contrast, it found that, from a physical standpoint, a slap would not alleviate any risk to an officer.  Id.  Instead, the court found that the slap was gratuitous and constituted excessive force.  Id.

Taken together, these cases define an outer boundary for the use of reasonable

force.  First, an officer is only entitled to use force when there is an active theat to safety or active resistance.  If the threat is mitigated prior to the use of force, it becomes unreasonable and excessive.  Second, the purpose of the use of force must be to mitigate the threat of harm or stop an arrestee's resistance.  When the use of force is not directed to these ends, it is gratuitous and excessive.

### c. Deliberate Indifference to a Serious Medical Need

"The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishment Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). The rights of pretrial detainees are analogous to those of convicted prisoners and courts apply the same standard, regardless of the detainee's status. Watkins v. City of Battle Creek, 273 F.3d 682, 685-86 (6th Cir. 2001).  A claim for the deprivation of adequate medical care has both an objective and a subjective component.  Johnson, 398 F.3d at 374.

The objective component of a claim of deliberate indifference requires a medical need that is "sufficiently serious." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). When the need involves minor maladies, a plaintiff is required to provide medical evidence providing the delay in treatment was detrimental.  Id.  However, "'[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person,' this obviousness itself is sufficient to satisfy the objective component of the adequate medical care test.  Id. (quoting Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004)).

"To satisfy the subjective component, the plaintiff must allege facts which, if true,

would show that the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). Because a plaintiff must prove the defendants' subjective knowledge, the test is "onerous." Id. When treatment is provided "carelessly or inefficaciously" it does not demonstrate deliberate indifference, but "merely a degree of incompetence that does not rise to the level of a constitutional violation." Id. Instead, "deliberate indifference to a substantial risk of serious harm . . . is the equivalent of recklessly disregarding that risk." Id. There is no need to show that the defendant intended to cause harm or knew that harm would result. Id.

### d. Equal Protection

Shumate's complaint also alleges a 42 U.S.C. § 1983 claim on the basis of a violation of the Equal Protection Clause. Cleveland and Blanchard assert that there is no factual basis for such a claim and Shumate did not respond to this assertion. Because Shumate has not responded to Cleveland and Blanchard's assertion, they are entitled to summary judgment with respect to Shumate's allegations under the Equal Protection Clause.

### 2. State Law Claims

### a. Governmental Immunity

The Michigan Supreme Court has held that intentional torts such as assault, battery, false arrest, and IIED are subject to governmental immunity. See Odom v. Wayne County, 482 Mich. 459, 480 (2008). That court further held that the

Governmental Tort Liability Act did not alter the common law standard for governmental immunity for intentional torts.  Id. at 472-73.  To qualify for governmental immunity for an intentional tort, a defendant-employee must establish that:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope his authority,
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
> © the acts were discretionary, as opposed to ministerial.

Id. at 480 (citing Ross v. Consumers Power, 420 Mich. 567 (1984)).  A defendant-employee does not act with good faith when he "does not act honestly," but acts with "a wanton or reckless disregard for the rights of another."  Id. at 473-74.

### b. Assault and Battery

Michigan defines assault as "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under apparent present ability to accomplish the contact."  Espinoza v. Thomas, 189 Mich. App. 110, 119 (1991).  A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact."  Id. Despite the fact that it would otherwise constitute an assault or battery, "a police officer may use reasonable force when making an arrest."  Brewer v. Perrin, 132 Mich. App. 520, 528 (1984) (citing Firestone v. Rice, 71 Mich. 377 (1888).  Reasonable force has been defined as "that which an ordinarily prudent and intelligent person with the knowledge and in the situation of the arresting officer, would have deemed necessary." Id.

### c. False Arrest

Like a claim of false arrest under 42 U.S.C. § 1983, a false arrest claim under Michigan law requires "an illegal or unjustified arrest" which is "not based on probable cause." Peterson Novelties, Inc. v. City of Berkley, 259 Mich. App. 1, 18 (2003). If an arrest was based on probable cause – and was therefore legal – it cannot be the basis for a claim of false arrest. However, there is no need to show that the arrestee was actually guilty of any offense. Id. ("Whether the plaintiff would actually have been convicted is irrelevant because actual innocence is not an element of false arrest."). Michigan courts have further clarified that a false arrest is "one without legal authority." Lewis v. Farmer Jack Division, Inc., 415 Mich. 212, 218 n.2 (1982) (quoting RESTATEMENT (SECOND) OF TORTS § 45A cmt. (b)). Thus a police officer who participates in an arrest made pursuant to a properly issued warrant cannot be held liable for false arrest. Id.

### d. Intentional Infliction of Emotional Distress

The Michigan Supreme Court has never recognized IIED as an intentional tort under Michigan law. See Smith v. Calvary Christian Church, 462 Mich. 679, 686 n.7 (2000); Roberts v. Auto-Owners Insurance Co., 422 Mich. 594, 597 (1985). However, it has described the standards which would govern such a claim:

> The cases thus far decided have found liability only where the defendant's conduct had been extreme and outrageous. It has not been enough that defendant acted with an intent which is tortious or even criminal, or that he intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another

13

> tort.  Liability has been found only were the conduct has
> been so outrageous in character and so extreme in degree
> as to go beyond all bounds of decency, and to be regarded
> as atrocious, and utterly intolerable in a civilized community.
> Generally, the case is one in which the recitation of the facts
> to an average member of the community would arouse his
> resentment against the actor, and lead him to exclaim,
> "Outrageous!"

Id. at 603.  To make out a prima facie case for intentional infliction of emotional distress,

a plaintiff must establish "(1) extreme or outrageous conduct, (2) which intentionally and

recklessly, (3) causes, (4) extreme emotional distress."  McCahill v. Commercial Union

Insurance Co., 179 Mich. App. 761, 768 (1989).

### e. Gross Negligence

Michigan courts do not allow a plaintiff to premise a negligence claim on an

intentional tort.  VanVorous v. Burmeister, 262 Mich. App. 467, 483–84 (2004).

Shumate's gross negligence claim is premised on an allegation that Cleveland and

Blanchard arrested, denied medical treatment to, and assaulted and battered him.

Each of these underlying acts is an intentional tort.  Accordingly, Cleveland and

Blanchard are entitled to summary judgment with respect to Shumate's gross

negligence claim.

### B. ANALYSIS

### 1. § 1983 False Arrest

Shumate says the officers lacked probable cause to arrest him because (1) his

arrest occurred before the officers were aware of his outstanding warrants in the LEIN

system and (2) that the primary purpose of the arrest was his medical condition rather

than the outstanding warrant.

Cleveland said that Palazzolo authorized Shumate's arrest after he checked the LEIN system and discovered Shumate's outstanding arrests. This statement was corroborated by Shumate who said that, when he was arrested, Cleveland and Blanchard told him that it was pursuant to a warrant. In contrast, Shumate relies on a statement by Blanchard that he was unsure whether the LEIN check was conducted before the officers first attempted to handcuff Shumate. However, there was a delay between Blanchard's first attempt to handcuff Shumate and his actual arrest and Blanchard's statement is irrelevant to the question of whether the Cleveland and Blanchard were aware of the LEIN warrants when the arrest was finally made. As a result, Shumate has not created a genuine issue of material fact as to whether the officers' awareness of the LEIN warrant preceded his arrest.

Shumate makes a number of other assertions which are insufficient to create a genuine issue of material fact with respect the existence of probable cause to arrest him. There is no dispute that Cleveland and Blanchard were concerned over Shumate's medical condition in the parking lot and sought to control him before he injured himself or another. In addition, there is no dispute that Shumate was never charged with anything after he was released from the hospital. However, neither of these facts negate the probable cause that the LEIN warrants provided. Even if the Court were to find that these facts overcame the LEIN warrants and created a constitutional violation, Cleveland and Blanchard would be entitled to qualified immunity because there is no clearly established right to be free of arrest when a LEIN warrant provides probable cause.

Therefore, Cleveland and Blanchard are entitled to summary judgment on Shumate's § 1983 to the extent that it is based on a claim of false arrest.

## 2. § 1983 Excessive Force

While the parties agree that Blanchard struck Shumate in the face while securing him in the police car, they disagree on many of the facts surrounding the incident. Shumate admits that he initially resisted the police, but says that he became compliant after he was handcuffed. He says that he was unable to enter the police car without assistance because he was handcuffed and the car was small. He asserts that he became stuck as Blanchard forced him into the car, requiring Blanchard to partially enter the car as well. He says that repeated that he was a diabetic and only needed sugar. Shumate and Hilton both said that he was foaming at the mouth and unintentionally spit on Blanchard as he spoke. Hilton said that Blanchard became red in the face and struck Shumate in the face with a closed fist. Blanchard agreed that he became upset when Shumate spit on him.

In contrast, Blanchard says that Shumate remained resistant as he attempted to secure him in the car. Hilton said that Shumate cursed at Blanchard when he repeated that he was a diabetic and needed sugar. In addition, Blanchard said that he believed that Shumate spit on him intentionally. Blanchard said that he struck Shumate because he continued to resist the officer's attempt to secure him in the car. He also said that he knew that Shumate had a medical condition and feared that it could be spread through his saliva.

Because Shumate is the non-movant, disputed facts must be resolved in a light most favorable to him. Summary judgment is not appropriate if the facts, when viewed

in that light, would permit a reasonable jury to find that Blanchard's use of force was excessive. Under Shumate's version of the facts, a reasonable jury could find that a constitutional violation occurred. Shumate did not commit any crime at the time of his arrest and his LEIN warrants were not for serious crimes. Shumate also says that he became complaint after he was handcuffed and was not resistant when he was struck. Finally, he says that Blanchard struck him out of anger, not because of any perceived threat. Under this version of the facts, Blanchard's actions would constitute an excessive use of force. Even if Blanchard's actions would be considered reasonable under his own view of the facts, this merely creates a genuine issue of material fact, making summary judgment improper.

In addition, Blanchard is not entitled to qualified immunity because the Shumate's constitutional rights were clearly established. As described above, an officer may not use force against a previously resistant arrestee who has since become compliant. Nor can an officer use force when he is motivated by anything other than a desire to mitigate a perceived threat to the safety of himself or others. Under Shumate's version of the facts, Blanchard struck him after he had become compliant and out of anger. As a result, Blanchard's actions would constitute a violation of his clearly established rights.

Shumate's claim of excessive force is based solely on Blanchard's actions in striking him while securing him in the police car. Because Cleveland was not involved in this action, he is entitled to summary judgment on this claim.

### 3. § 1983 Deliberate Indifference

Shumate alleges that Cleveland and Blanchard were deliberately indifferent to his serious medical needs when they denied him immediate treatment at the Center.

17

Shumate bases his claim on the following facts: (1) the 911 call stated that he was having a medical problem, (2) EMS responded to the 911 call along with the police, (3) Shumate repeatedly stated that he was a diabetic and only needed sugar, (4) EMS asked Cleveland and Blanchard to let them test and treat Shumate, (5) Shumate's coworkers asked Cleveland and Blanchard to provide him with treatment, (6) Shumate never used or threatened force against anyone, (7) Shumate's blood sugar was bottoming out, and (8) Shumate was foaming at the mouth and having difficulty speaking.  In addition to disputing Shumate's version of the facts, Cleveland and Blanchard assert that they are entitled to qualified immunity because Shumate has not established that he suffered any harm due to the delay in his treatment.  They further assert that they did not delay Shumate's treatment in order to punish him, but because they believed that treating him in a secure environment was in his best medical interests.

Shumate can meet the objective prong of the deliberate indifference standard because the seriousness of his condition was obvious to a lay person.  Even if Cleveland and Blanchard are correct in asserting that Shumate has failed to establish that the delay in his treatment was detrimental, that showing is not required when the seriousness of the condition is obvious.  See Johnson, 398 F.3d at 374.  Shumate has provided evidentiary support for the assertion that the police responded to a 911 call for a medical emergency and observed that Shumate was having difficulty walking and speaking and was foaming at the mouth.  While the officers dispute some of these facts, that merely creates a genuine issue of material fact that precludes summary judgment. When these disputes are resolved in Shumate's favor, the facts are sufficient to

establish a serious medical need that would be obvious to a lay person.  Moreover, a number of lay people – including Cleveland, Blanchard, and Hilton – stated that Shumate's medical needs were obvious to them while Shumate was detained at the Center.  Finally, the obviousness of Shumate's serious medical condition is underscored by the fact that both Shumate and the EMS personnel unequivocally informed the officers that Shumate needed medical attention.

When the facts are viewed in a light most favorable to Shumate, he can also establish the subjective prong of the deliberate indifference standard.  Shumate's assertion that the 911 call specifically requested medical assistance, the EMS response to the 911 call, and Shumate's statements that he was a diabetic who only needed sugar are likely sufficient to establish that Cleveland and Blanchard subjectively perceived facts from which to infer a substantial risk to Shumate and that they did draw such an inference.  However, the Court need not rely on this disputed evidence because Cleveland and Blanchard have essentially admitted their awareness of Shumate's need for medical attention.  There is no dispute that EMS personnel requested permission to access, test, and treat Shumate while he was detained at the Center.  Cleveland and Blanchard admit that they refused the EMS request, claiming a concern over Shumate's safety.  At a minimum, this establishes that the officers perceived facts from which to infer a substantial risk to Shumate when the EMS personnel told them he needed treatment and that the did draw the inference of a substantial risk by responding to the EMS personnel and delaying treatment until Shumate was transferred.

Still, Shumate must also demonstrate that the Cleveland and Blanchard

disregarded that risk by choosing to transport him to a secure environment prior to treating him. Cleveland and Blanchard rejected the advice of the EMS personnel and determined on their own that Shumate could be treated most effectively by delaying his treatment until he could be transported to a secure facility. There is nothing in the record to suggest that either Cleveland or Blanchard have any medical training which would allow them to assess the severity of Shumate's condition or the risk posed by delaying him treatment. In contract, the EMS personnel are trained medical professionals with the expertise to assess the severity of Shumate's condition; they wanted to treat him immediately. When Cleveland and Blanchard substituted their own judgment for that of trained medical professionals, they recklessly disregarded the risks posed by Shumate's medical condition.

Many of the facts which support a finding of deliberate indifference are disputed by Cleveland and Blanchard and they will have an opportunity to dispute those facts at trial. However, when reviewing a motion for summary judgement, a court must resolve such factual disputes in favor of the non-movant. When viewed in such a light, Shumate can establish a claim for deliberate indifference to a serious medical need.

Cleveland and Blanchard also assert that they are entitled to qualified immunity because Shumate's constitutional right to receive immediate treatment was not clearly established at the time of their actions. Police officers are entitled to qualified immunity when they rely on the opinion of trained medical professionals or on statements of detainees that they are not in need of medical care. See, e.g., Spears v. Ruth, 589 F.3d 249, 255 (6th Cir. 2009) (collecting cases). Cleveland and Blanchard did not rely on the opinion of the EMS professionals in delaying Shumate's medical treatment; they

20

expressly rejected it. Cleveland and Blanchard did not rely on statements by Shumate; he informed them that he was a diabetic in need of immediate treatment. In sum, the prior case law teaches that officers are protected when they recognize their own lack of medical expertise and rely on the opinions of medical professionals or the representations of a detainee. In this case, both the medical experts and the detainee sought immediate medical treatment, but were ignored by Cleveland and Blanchard. The officers acted contrary to the clearly established standards and are not entitled to qualified immunity.

### 4. Assault and Battery

Shumate's claim of assault and battery is premised on the same facts as his claim of excessive force – Blanchard's action in striking him in the face while securing him in the police car. Summary judgment is inappropriate with respect to Shumate's claim of assault and battery due to the genuine issues of material fact described above. Under Shumate's version of the facts, he was seeking to comply with the Blanchard, was unable to enter the police car without assistance, and unintentionally spat on Blanchard while asking for medical assistance. Under these facts, an "ordinarily prudent and intelligent person" would not have deemed it necessary to strike Shumate on the face. See Brewer, 132 Mich. App. at 528. However, if Shumate was resisting the Blanchard, cursed at him, and intentionally spat on him the use of force may have been necessary. As a result, there is a genuine issue of material fact as to whether Blanchard used reasonable force in making an arrest.

Further, Blanchard is not entitled to governmental immunity unless he acted in good faith rather than malice. Odom, 482 Mich. at 480. Shumate asserts that

Blanchard struck him out of anger – a motivation that is inconsistent with good faith. Thus there is a genuine issue of material fact with respect to Blanchard's motivation which precludes the application of governmental immunity.

Shumate's claim of assault and battery is based solely on Blanchard's action in striking him while securing him in the police car. Because there are no specific allegations of assault and battery against Cleveland, he is entitled to summary judgment with respect to this claim.

### 5. State Law False Arrest

As described above, Cleveland and Blanchard had probable cause to arrest Shumate because they were aware of his LEIN warrants when arrested him. Because there was probable cause to execute the arrest, Cleveland and Blanchard cannot be liable for false arrest and are entitled to summary judgment with respect to that count.

### 6. Intentional Infliction of Emotional Distress

Shumate's claim of IIED is based on (1) denying him medical treatment, (2) arresting him without probable cause, and (3) striking him in the face while he was handcuffed. Because Shumate's arrest was based on probable cause, it cannot constitute extreme and outrageous behavior.

Although Shumate can maintain a cause of action for deliberate indifference against both officers and for excessive force and assault and battery against Blanchard, the Michigan Supreme Court made it clear that a defendant is not liable under a theory of IIED merely because he committed a tort against the plaintiff. To be liable under a theory of IIED, a defendant's actions must be "so outrageous in character and so

extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Roberts, 422 Mich. at 603.

Even when the facts are viewed in a light most favorable to Shumate, Blanchard's actions do not arise to that level. While Blanchard's actions may have been gratuitous and excessive, there is no question that he was provoked by Shumate's spitting on him. Even if the spit were unintentional, Blanchard's response is understandable. Even if wrong, it cannot be characterized as "beyond all bounds of decency," "atrocious," or "utterly intolerable" such that an average member of the community would exclaim "Outrageous." See id. By the same token, the officer's decision to transport Shumate prior to treating him is insufficient to support a claim of IIED. While the officers made a mistake in trusting their own judgment over that of the EMS personnel, their motive was to successfully treat Shumate, not to punish him. Therefore, Blanchard and Cleveland are entitled to summary judgment on this count.

## V. CONCLUSION

For the reasons above, Cleveland's motion for summary judgment is GRANTED with respect to Counts II, III, IV, and V and DENIED with respect to Count I under a theory of deliberate indifference. Blanchard's motion for summary judgment is GRANTED with respect to Counts III, IV, and V and DENIED with respect to Count I under the theories of excessive force and deliberate indifference and with respect to Count II.

Dated: July 14, 2010          S/Avern Cohn
                              AVERN COHN
                              UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 14, 2010, by electronic and/or ordinary mail.

S/Michael Williams
Case Manager, (313) 234-5160